Grace B. McDermott, Appellee, v. A. B. C. Oil Burner Sales Corporation and Automatic Burner Corporation, Appellants.

Gen. No. 35,434.

Opinion filed April 5, 1932.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, for appellants; ERNEST D. MACDOUGALL and ISAAC E. FERGUSON, of counsel.

FINN & MILLER, for appellee; ROBERT S. COOK, of counsel.

MR. JUSTICE KERNER delivered the opinion of the court.

This appeal is prosecuted by defendants to reverse a judgment for $4,000, rendered in favor of plaintiff for damages to her real estate by the destruction of four large trees and other vegetation.

The A. B. C. Oil Burner Sales Corporation will hereafter be referred to as the Sales Corporation, and the Automatic Burner Corporation as the Automatic Corporation. The declaration consists of three counts. The first count charges in substance that on September 29, 1928, each of the defendants was carrying on its business of manufacturing, buying, selling and installing oil burner heaters with all accessories and adjuncts thereto, and that Sales Corporation entered into a written contract with John A. McDermott, husband of plaintiff, to sell and install on plaintiff's premises an oil burner heater, a tank for the storage of oil,

and additional equipment listed in the contract for $734; that John A. McDermott paid $734 to Sales Corporation and complied with the terms of said contract; that Sales Corporation employed Automatic Corporation as its *agent* to put into and take out of said tank, and to handle on plaintiff's premises, oil and other liquids, to install said tank and assist in the performance of the obligations assumed under said contract by Sales Corporation; that it was the duty of the defendants to exercise due care and diligence for the safety of plaintiff's premises in building and installing said oil burner, etc.; that defendants and each of them, acting through their officers, agents and employees, negligently and carelessly put into, took out of said tank, oil, and carelessly scattered and spread said oil and allowed it to leak and spread from said tank upon plaintiff's premises on or about March 14, 1929. The second count charges that defendants and each of them, acting through their agents and employees, negligently and carelessly installed and built said tank and negligently performed other obligations assumed under said contract, so that oil was allowed to leak and spread from said tank upon plaintiff's premises on March 14, 1929. The third count charges trespass *vi et armis*. Each count alleged that plaintiff was at all times in the exercise of due care. The defendants filed pleas of the general issue as to the first and second counts and a special plea of leave and license as to the third count.

The undisputed controlling facts, as disclosed by the evidence, are that the Automatic Corporation is a corporation organized prior to 1923, engaged in the manufacture of oil burners at 1823 Carroll avenue, Chicago. It sells its burners to the Sales Corporation, as well as to any other dealer. F. J. Hirsch is its president and Edward A. Weil its secretary and treasurer. A part of its capital stock is owned by F. J.

Hirsch, Edward A. Weil and Claude E. Smith, *but it does not appear who are the other owners or what proportion of the capital stock is owned by others.*

The Sales Corporation was organized in 1925, and has its place of business at 123 East Oak street, Chicago, and is engaged in the business of selling automatic oil burners manufactured by the Automatic Corporation, *but that is not all of its business,* the relation between the two corporations being that of buyer and seller, the Sales Corporation buying wholesale from the Automatic Corporation and selling at retail prices to its customers, and each of the companies paying its own employees, with no accounting by the Sales Corporation to the Automatic Corporation for its receipts or profits, its profits being paid to the stockholders of the Sales Corporation. Edward A. Weil is president and F. J. Hirsch is secretary of the Sales Corporation, who with Claude E. Smith are its directors. All of the capital stock of the Sales Corporation is owned by F. J. Hirsch, Edward A. Weil, Claude E. Smith and the Automatic Corporation.

September 29, 1928, the Sales Corporation entered into a written contract with John A. McDermott, husband of plaintiff, in and by which the Sales Corporation agreed to furnish and install as part of the heating apparatus in a building located at Glencoe, Illinois, one Heatking oil burner as per manufacturer's specifications. In addition to the Heatking oil burner manufactured by the Automatic Corporation, the Sales Corporation agreed to furnish a Teesdale automatic oil pump; one double throw switch and aquastat, and one steel storage tank or 1,500-gallon capacity to be buried in the ground, together with filling and supply lines and connections, for all of which McDermott agreed to pay to the Sales Corporation $734. The tank was installed about November 10 or 12, 1928, by

Crosair Tank Company under a contract with the Sales Corporation. November 16, two employees of the Sales Corporation went upon the premises and pumped 700 gallons of water into the tank to keep it from floating. November 17, 1928, McDermott ordered oil to be delivered and placed in the tank, and when the employees of the oil company pumped out the 700 gallons of water the tank floated and the attempt to deliver the oil was abandoned. November 18, the tank was reset by the employees of the Crosair Tank Company. November 21, 1,562 gallons of oil were delivered and pumped into the tank. The day after the oil was delivered, the connecting pipes, which had been cut off in the process of resetting the tank, were replaced by the employees of the Crosair Tank Company.

The work of installing the oil burner by the employees of the Sales Corporation and putting it into operation began March 14, and was completed March 17, 1929. Upon the completion of the installation it was discovered that there was water in the oil tank and about 280 gallons of the contents of the tank were pumped out on the ground, thereby infusing the surrounding soil with oil.

Three of the trees in question died in July, 1929, and the fourth a year later. During June, 1931, samples of soil were taken from nine different portions of the lot and subjected to chemical tests, all showing more or less oil contents.

It also appears from the record that on October 1, 1930, on a letterhead of the Automatic Corporation, the Sales Corporation wrote a letter to John A. McDermott, signed by Edward A. Weil as secretary-treasurer of the Automatic Corporation; that on October 11, 1930, the Sales Corporation, on a letterhead of the Automatic Corporation, addressed a letter to McDermott, and on November 5, 1930, the Sales Cor-

poration wrote a letter on the letterhead of the Automatic Corporation to plaintiff's attorney, signed by Edward A. Weil as president of the Sales Corporation, all three of these letters pertaining to a possible settlement of the case.

At the outset it is contended by plaintiff's counsel that since the Automatic Corporation pleaded only the general issue, plaintiff was not required to prove that the Automatic Corporation participated in the transaction between the plaintiff and the Sales Corporation. The point is not well taken. Plaintiff's claim is founded upon and the declaration charges that the two defendants committed a tort, the Sales Corporation as principal and the Automatic Corporation as agent, or that the two corporations acted in concert as joint feasors. It has always been the law that where two or more defendants are jointly charged with the commission of a tort the joint action of the defendants is negatived by a plea of not guilty. (*Yeazel v. Alexander*, 58 Ill. 254; *Peters v. Howard*, 206 Ill. App. 610; *McHale v. McQuigg*, 236 Ill. App. 295, 298; *Blade v. Site of Ft. Dearborn Bldg. Corp.*, 245 Ill. App. 484, 489.)

Plaintiff's counsel further contends that the foregoing facts establish that the defendant corporations were not separate entities, but are one and identical, and that in legal effect both acted in the matter of the sale and installation of the tank, burner and equipment, or that the Sales Corporation was the agent of the Automatic Corporation.

Assuming, but not deciding, that there was sufficient evidence upon which to base a finding and judgment against the Sales Corporation, we shall consider only the question of whether there was any proof establishing liability on the part of the Automatic Corporation.

It is an elementary and fundamental principle of corporation law that a corporation is an entity sep-

arate and distinct from its stockholders and from other corporations with which it may be connected. The fact that the stockholders of two corporations are identical, that one owns shares in another, and that they have mutual dealings, will not, as a general rule, merge them into one corporation. However, the legal fiction of distinct corporate existence will be disregarded when necessary to circumvent fraud, or where the corporation is so organized and controlled, and its affairs so conducted as to make it merely an instrumentality of another corporation. (*In re Watertown Paper Co.*, 169 Fed. 252.) The mere fact that the stockholders in two or more corporations are the same, or that one corporation exercises a control over the other through ownership of its stock or through identity of its stockholders, does not make either the agent of the other, nor does it merge them into one, so as to make a contract of one corporation binding upon the other, where each corporation is separately organized under a distinct charter. (*Pittsburgh & Buffalo Co. v. Duncan*, 232 Fed. 584.) In *Berkey v. Third Ave. R. Co.*, 244 N. Y. 84, 87, Mr. Justice Cardozo held that stock ownership alone would be insufficient to charge a dominant company with liability for the torts of a subsidiary. See also *Costan v. Manila Electric Co.*, 24 Fed. (2d) 383; *Owl Fumigating Corp. v. California Cyanide Co.*, 24 Fed. (2d) 718; *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 Fed. (2d) 265. The mere fact that two corporations have the same officers and stockholders does not render one of the corporations liable for torts committed by the other. (*Great Salt Lake Amusement Co. v. Lagoon Amusement Co.* (Utah), 294 Pac. 301.) In *New York Trust Co. v. Carpenter*, 250 Fed. 668, 674, it was said:

"From an examination of many decisions, we venture to say that no corporation acting within its

powers has been held liable for the debts of another corporation legally organized, because it controlled such corporation by reason of ownership of its stock, or otherwise, except by reason of contract or on grounds of agency, or of estoppel, or because the controlled corporation has been used in such a way that the maintenance of its character as a separate and distinct entity would work injustice.''

In *First Nat. Bank v. Walton,* 146 Wash. 367, the Clear Lake Lumber Company, a corporation, was engaged in logging and sawmill operation business, and those in charge of its affairs conceived the idea of organizing an independent sales corporation. The Lumber Company subscribed for 2,494 shares and the remaining shares of the capital stock were subscribed by those who became officers of the sales corporation. The court, at p. 374, said: ''It is not enough to call for adjudicating two corporations to be in legal effect one, that it merely appear that one is the owner of practically all of the stock of the other, and that they are very intimately related in jointly carrying on their business for the purpose of mutual benefit.'' See also *General Motors Corp. v. Moffett,* 27 Ohio App. 219, 160 N. E. 878; *Louisville Gas & Electric Co. v. Moore,* 215 Ky. 273; *Perry v. Ohio Valley Elec. Ry. Co.,* 70 W. Va. 697; *Pullman's Palace Car Co. v. Missouri Pac. Ry. Co.,* 115 U. S. 587, 596; *Peterson v. Chicago, R. I. & P. R. Co.,* 205 U. S. 364; *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U. S. 333, 335; *Chicago Hydraulic Press Brick Co. v. Campbell,* 116 Ill. App. 322. In *Davis v. John R. Thompson Co.,* 239 Ill. App. 469, 475, the court said: ''Even in cases where a corporation sued owned the whole or practically all of the stock of the corporation which caused an injury, and where such corporation, through the election of its board of directors, had the practical control of the corporation causing the injury, still, unless the cor-

poration sued actually possessed or operated, through its board of directors, the corporation that caused the injury, or there was a joint or partnership operation, the corporation sued has been held not liable.'' . . . Continuing, the court said on p. 477; ''The mere fact that two corporations may have certain persons who are managing officers in both corporations, in and of itself, will not render one corporation liable for injuries caused by the other.''

It is not claimed there was any fraud, actual or constructive, in the organization of the Sales Corporation, and there is no evidence that the Automatic Corporation participated in the affairs of the Sales Corporation except in the normal and usual manner of a stockholder; on the contrary, the business of the two corporations is entirely separate and distinct, and we have been unable to discover any evidence which would warrant disregarding the corporate entity existing between the two corporations on the ground of agency or estoppel, or because justice required it. Under such circumstances, the evidence is insufficient to sustain a judgment against the Automatic Corporation.

It is unavoidable, though regrettable, that the judgment as to both defendants must be reversed, as a judgment against two defendants is a unit, and if it must be reversed for error against one, it must be reversed as to both. (*South Side El. R. Co. v. Nesvig,* 214 Ill. 463, 469; *Livak v. Chicago & Erie R. Co.,* 299 Ill. 218, 226, and *Singer v. Cross,* 257 Ill. App. 41, 44.)

The judgment of the superior court is reversed and the cause remanded.

*Reversed and remanded.*

GRIDLEY, P. J., and SCANLAN, J., concur.