GENE WALKER, Plaintiff-Appellee, *v.* DOMINICK'S FINER FOODS, INC., Defendant-Appellant.

First District (3rd Division)    No. 78-1887

Opinion filed December 31, 1980.—Rehearing denied February 3, 1981.

Baker & McKenzie, of Chicago (Francis D. Morrissey, John M. McDermott, and Terrence M. Johnson, of counsel), for appellant.

John C. Ambrose, of Chicago (F. John Cushing, III, of counsel), for appellee.

Mr. JUSTICE RIZZI delivered the opinion of the court:

This is a personal injury action in which plaintiff, Gene Walker, claims he was injured as a result of a wilful and wanton assault and battery committed by an employee of defendant, Dominick's Finer Foods, Inc. A jury returned a general verdict in favor of plaintiff in the amount of $8,000. The jury also answered a special interrogatory finding plaintiff guilty of provocation which was a proximate cause of the injury. Judgment was entered on the answer to the special interrogatory in favor of defendant. In ruling on plaintiff's post-trial motion, the trial court vacated the judgment and entered judgment on the general verdict. We reverse and remand for a new trial.

On March 4, 1972, plaintiff was delivering produce to a Dominick's store at 30th and Halsted Streets in Chicago, Illinois. According to plaintiff, he entered the store and shouted, "Produce." The store manager, Frank Caruso, went over to plaintiff, and plaintiff told Caruso that he was shouting "Produce" in order to attract the attention of one of the employees. He said that he wanted the area cleaned up so that he could unload his produce. Plaintiff claims he went to step around Caruso, and Caruso "stepped sort of in front of" him. Plaintiff stated that he had turned around to see if the area was clear, and he could have struck Caruso as he turned. Plaintiff lost his balance, slipping on some boxes or crates, and grabbed Caruso as he was falling. Plaintiff testified that after he fell, Caruso "came down on top" of him and was punching him in the face. Plaintiff was then attempting to hit Caruso, but at the same time he was trying to get back on his feet. Some of Dominick's other employees then pulled the two men apart. As a result of the incident, plaintiff suffered a fractured nose and had contusions and abrasions on his face.

A witness stated that plaintiff was swearing while in the back of the Dominick's store because he wanted to unload his truck. Caruso tried to quiet plaintiff because there was a lady in the room. Plaintiff continued to swear, and he started "walking into" Caruso. According to this witness, plaintiff tried to punch Caruso and missed, so Caruso "swung back" and

hit plaintiff. After both men fell to the ground, Caruso hit plaintiff again. Plaintiff stood up and pulled out a knife or a shiny object. Caruso then ran from the room.

Another witness also testified that plaintiff was swearing while in the back of the store. This witness stated that plaintiff walked up to Caruso, and Caruso backed off a little. Plaintiff continued walking, "just bumping into [Caruso] with his chest." According to this witness, plaintiff then swung at Caruso, but Caruso blocked the punch and hit plaintiff. The two men fell to the floor. After some people pulled Caruso off plaintiff, plaintiff pulled out a knife.

We first consider defendant's argument that the answer to the special interrogatory finding plaintiff guilty of provocation was inconsistent with the general verdict, and therefore, judgment should have been entered on the answer to the special interrogatory. We conclude that the special interrogatory was improper, and therefore, the answer was a nullity.

■■ The special interrogatory reads:

"Before and at the time of the occurrence, was the plaintiff guilty of any provocation which was a proximate cause of the injury?"

In order for a special interrogatory to be proper, it must relate to one of the ultimate issues in the case. (*Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 594, 335 N.E.2d 774, 778-79; *Le Flore v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 71, 74, 297 N.E.2d 758, 760.) Here, the special interrogatory does not relate to an ultimate issue since provocation is not a justification for or a complete defense to an assault and battery action. (See generally 6A C.J.S. *Assault and Battery* §18 (1975).) In an action for assault and battery, provocation would not defeat the action except to the extent that it may be involved in the issue of self-defense. Thus, in the present case, self-defense would have been the proper defense to raise, rather than provocation, and self-defense would be an ultimate issue. *Cf. Willhite v. Goodman* (1978), 64 Ill. App. 3d 273, 275, 381 N.E.2d 68, 69-70; see generally Prosser, Torts §19 (4th ed. 1971).

■■ The answer to the special interrogatory is a nullity for another reason. The jury instruction defining provocation states:

"Provocation is defined as an act or instance of provoking an act or inciting anger, irritation, or annoyance."

As defined in the instruction, provocation could include mere words, but mere words would not justify Caruso's resort to force. (*Willhite*, 64 Ill. App. 3d 273, 275, 381 N.E.2d 68, 69; *Donnelly v. Harris* (1866), 41 Ill. 126, 128.) Therefore, the affirmative answer to the special interrogatory is not solely determinative of this case and it must be considered a nullity.

■■ We next consider whether the trial court erred in refusing to instruct the jury with respect to plaintiff's alleged duty to be free from contributory wilful and wanton conduct. We agree with the trial judge on this

point. Since this case involves assault and battery, which are intentional torts, freedom from contributory wilful and wanton conduct is not an element for the cause of action and is therefore not an issue in the case. The significance of the fact that this case involves intentional torts is illustrated by what the court stated in *Bohacs v. Reid* (1978), 63 Ill. App. 3d 477, 480; 379 N.E.2d 1372, 1374:

> "Some extraneous or irrelevant issues have been introduced in the briefs. The defendants contend the complaint is defective in alleging willful and wanton misconduct on the part of the defendant officer, without alleging freedom from willful and wanton misconduct by the plaintiff. The plaintiff does not specifically charge negligence—he charges * * * an intentional act. Conduct may be willful and wanton without deriving from negligence. If the conduct of the officer was intentional, there is no necessary corollary of freedom from contributory willful and wanton misconduct by the plaintiff. We therefore disregard this argument of the defendants."

We likewise distinguish charges of wilful and wanton conduct made in an intentional tort action from those made in a nonintentional tort action. In the intentional tort action, where the charges of wilful and wanton conduct relate solely to the possible recovery of punitive damages, freedom from contributory wilful and wanton conduct by the plaintiff is not an element of the cause of action and is therefore not an issue in the case. In the nonintentional tort action, where it is alleged that the defendant's conduct was wilful and wanton, freedom from contributory wilful and wanton conduct by the plaintiff is an element of the cause of action, and it is therefore an issue in the case. Examples of such nonintentional tort actions include cases in which the plaintiff seeks to overcome the defense of contributory negligence by showing wilful and wanton conduct on the part of the defendant, cases in which the plaintiff in a personal injury action is a trespasser, cases in which a social guest sues for injuries occurring on his host's premises (see Illinois Pattern Jury Instructions, Civil, No. 14.01, Comment (2d ed. 1971)), or certain cases in which a student brings a personal injury action against a teacher (see *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 173, 347 N.E.2d 705, 709).

Since the present case involves assault and battery, which are intentional torts, freedom from contributory wilful and wanton conduct on the part of the plaintiff is not an element of the cause of action and is therefore not an issue. It follows that the trial court properly refused defendant's tendered instruction with respect to plaintiff's alleged duty to be free from contributory wilful and wanton conduct.

■ We next address certain issues involving the claim for punitive

damages. Defendant contends that the issue of punitive damages should not have been submitted to the jury. We disagree. Under the facts and circumstances of this case, we believe a jury question is presented as to whether plaintiff is entitled to punitive damages. Part of the problem relating to the issue of punitive damages stems from confusion caused by plaintiff in pleading wilful and wanton conduct and seeking to recover compensatory and punitive damages in a single count. It is better practice to seek punitive damages in a separate count so that the issues in a case may be distinctly drawn and tried.

██ In dealing with the issue of punitive damages, the trial court allowed plaintiff to introduce evidence of the net sales of Fisher Foods, Inc. This was done on the basis that although defendant is a separate corporation, it is allegedly a wholly owned subsidiary of Fisher Foods, Inc. We agree with defendant that there was not sufficient evidence to disregard the distinct corporate existence of the defendant, and that it was therefore error to admit the net sales figure of Fisher Foods, Inc., into evidence.

The legal fiction of distinct corporate existence will be disregarded when necessary to circumvent fraud or where the corporation is so organized and its affairs so conducted as to make it merely an instrument of another corporation. (*McDermott v. A.B.C. Oil Burner Sales Corp.* (1932), 266 Ill. App. 115, 121.) In particular, it has been held that if one corporation is merely a dummy or sham, the distinct corporate entity will be disregarded and the two corporations will be treated as one. (*Dregne v. Five Cent Cab Co.* (1943), 381 Ill. 594, 603, 46 N.E.2d 386, 391.) However, piercing a corporate veil is a task which a court undertakes reluctantly since there is a presumption of corporate regularity which usually requires the party seeking to have the corporate entity disregarded to come forward with a substantial showing that the corporation was really a dummy or sham for another corporation or party. See *Pardo v. Wilson Line of Washington, Inc.* (D.C. Cir. 1969), 414 F.2d 1145, 1149-50.

██ Here, Fisher Foods, Inc., is not and never was a party to the suit. It is a fundamental principle that a corporation is an entity separate and distinct from its stockholders and from other corporations with which it may be connected. (*McDermott*, 266 Ill. App. 115, 120-21.) Mere ownership of capital stock in one corporation by another does not create an identity of corporate interest between the two corporations, nor render the stockholding corporation the owner of property of the other, nor create the relationship of principal and agent, representative, or alter ego between the two corporations. Nor does the identity of officers of two corporations establish identity of the corporations. (*Superior Coal Co. v. Department of Finance* (1941), 377 Ill. 282, 289, 36 N.E.2d 354, 358.) The fact that one corporation exercises control over the other through ownership

of its stock or through identity of its shareholders does not make either the agent of the other nor merge them into one where each corporation is separately organized under a distinct charter. (See *McDermott*, 266 Ill. App. 115, 121.) Accordingly, we conclude that although Dominick's may be a wholly owned subsidiary of Fisher Foods, Inc., there is nothing in this record which would warrant the admission of the financial figures of Fisher Foods, Inc., a nonparty, into evidence.

In addition, the admissibility of this evidence was improper because it related to the net sales figure of the corporation rather than its net worth. Evidence of a defendant's net worth may be introduced in a case in which punitive damages is an issue. (*Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 200, 334 N.E.2d 79, 93; *Moore v. Jewel Tea Co.* (1969), 116 Ill. App. 2d 109, 135, 253 N.E.2d 636, 648, *aff'd* (1970), 46 Ill. 2d 288, 263 N.E.2d 103.) The purpose of admitting this evidence is to give the jury a true idea of defendant's financial ability to pay the judgment. However, the introduction of a net sales figure would be misleading since net sales may present a deceptive picture of financial ability to pay a judgment. (See *Fopay*, 31 Ill. App. 3d 182, 200, 334 N.E.2d 79, 94.) Net sales are not necessarily correlated to net worth or a defendant's financial ability to pay a judgment. The evidence of net sales was therefore not admissible.

■ The next question relates to the jury's failure to answer or sign the punitive damage verdict form submitted to it. The parties argue vigorously as to the significance of this fact, but we do not reach a conclusion on this point because the case is being remanded for a new trial. In this regard, in addition to the unanswered and unsigned verdict form for punitive damages, the record reflects a great deal of confusion relating to the cause of action and the trial itself. As a result, the issues were obfuscated as to whether the action involved wilful and wanton conduct based upon an intentional or nonintentional tort, whether contributory wilful and wanton conduct was an issue, whether provocation was a defense to the action, and whether self-defense was a proper defense. The record clearly evinces that the confusion and obfuscation was caused, encouraged and invited by both parties. Consequently, we conclude that there was not a fair trial on issues that were properly drawn and tried, and that the case must be remanded for a new trial.

Accordingly, the judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.

McNAMARA and SIMON, JJ., concur.