SUMNER REALTY COMPANY, d/b/a SRC Financial Services, Plaintiff-Appellant, v. THOMAS R. WILLCOTT, d/b/a Dupli-Print, Defendant-Appellee.

Fifth District    No. 5—85—0761

Opinion filed October 2, 1986.—Rehearing denied November 7, 1986.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M.

Roessler and Lisa A. Kuhn, of counsel), for appellant.

Nick D. Vasileff, of Madison, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Sumner Realty Company, d/b/a SRC Financial Services (hereinafter referred to as SRC), appeals from a judgment of the circuit court of Madison County dismissing its cause of action for recovery of personal property, damages and attorney fees and awarding defendant, Thomas R. Willcott, d/b/a Dupli-Print (hereinafter referred to as Willcott), compensatory and punitive damages and attorney fees on Willcott's counterclaim against SRC for violation of the Illinois usury statute (Ill. Rev. Stat. 1977, ch. 74, par. 1 *et seq.*). For the reasons which follow, we reverse in part and vacate and remand in part.

SRC is a corporation organized and operated under the laws of the State of Missouri. It maintains its offices and warehouse in St. Louis, Missouri. The sole activity of the corporation consists of buying real and personal property from vendors and then leasing it to third parties. It has no sales staff of its own. Rather, the lessees apparently select the property they desire from a vendor. SRC then purchases the property from that vendor and rents it to the particular lessee for specified terms. There is no dispute that SRC is duly authorized to transact business in the State of Illinois.

Defendant, Willcott, operates a printing business in Madison, Illinois. On May 12, 1978, Willcott ordered an offset duplicator press (hereinafter referred to as the press) from A. B. Dick Products Company of St. Louis for use in his business. The press cost $8,314.80, including sales tax. Willcott issued a check to A. B. Dick for $2,000. He characterized his payment as a downpayment. The A. B. Dick order form lists it as a deposit. On the same day, Willcott signed a lease agreement for the press with SRC. That agreement provided, *inter alia*, that Willcott was to rent the press from SRC for a term of 60 months at the rate of $154.71 per month. The first and last months' rent, plus rent for four additional months, was payable in advance. Willcott issued a check to SRC for this sum, totaling $928.26, when he signed the agreement. All rental payments were made payable at SRC's offices in St. Louis, Missouri.

The agreement was accepted by SRC on May 17, 1978, by one of its authorized representatives in St. Louis. A. B. Dick endorsed Willcott's $2,000 check over to SRC, and SRC purchased the press from A. B. Dick for the previously set price of $8,314.80. The press was then shipped to Willcott, who continued to use it in his business

through the time of trial.

Pursuant to the lease agreement, Willcott was responsible for paying tax on the press. He did not make this payment directly. Rather, it was paid by A. B. Dick, which charged SRC for it when the press was purchased, and SRC factored the tax amount into Willcott's rental obligations. Willcott was also responsible for obtaining insurance on the press, although SRC procured such insurance as well. It did so because of its experience that some lessees do not always adequately insure the leased property as required.

Paragraph 5 of the agreement expressly stated that no title or right in the press passed to Willcott and that he was required to return the press to SRC when the lease period terminated. By letter dated May 17, 1978, however, SRC granted Willcott the options, at the expiration of the lease agreement, of trading in the press "with full trade-in value applied in your favor" toward a subsequent lease or of purchasing the press for $1. SRC reserved the authority to withdraw these options if Willcott failed to make payments promptly. Thereafter, on June 7, 1978, SRC filed a Uniform Commercial Code financing statement with the recorder of Madison County, Illinois, in order to perfect its security interest in the press.

Willcott was repeatedly late in making his rental payments to SRC and eventually defaulted completely on the lease agreement. He made only 53 of the 60 required monthly installments, paying $8,199.63 of the $9,282.60 total due. He made no payments at all after August of 1982. Under paragraph 11 of the agreement, Willcott's default entitled SRC to recover possession of the press plus the balance of the rental payments still due. When Willcott refused to surrender the press to SRC, the corporation filed a complaint in the circuit court of Madison County requesting judgment in the amount of the unpaid rent and a writ of replevin to recover the press or, if the press could not be recovered, judgment for the additional sum of $8,134.80, representing the press' purchase price, plus attorney fees. Willcott, in turn, filed a counterclaim for compensatory and punitive damages and attorney fees, alleging that SRC's rental charges under the agreement violated the Illinois usury statute in effect at the time the agreement was made (Ill. Rev. Stat. 1977, ch. 74, par. 1 *et seq.*). Following a bench trial, the circuit court dismissed SRC's complaint and entered judgment for Willcott on his counterclaim, awarding him compensatory damages of $1,775.41, punitive damages of $2,500 and attorney fees. SRC now appeals.

SRC contends that the Illinois usury statute should not have been applied in this case because the disputed transaction was, in reality, a

sale, not a loan. In the alternative, it contends that even if characterized as a loan, the transaction was a business loan and therefore exempt from the usury statute's prohibitions. We need not reach the specifics of these arguments, however, for there is an even more fundamental defect in Willcott's usury claim which should have barred his recovery.

■ Paragraph 14 of the agreement states unambiguously, "This lease shall be governed and construed in accordance with the law of the State of Missouri." Illinois has recognized the validity of such choice-of-law provisions. (See *Reighley v. Continental Illinois National Bank & Trust Co.* (1945), 390 Ill. 242, 249, 61 N.E.2d 29; *Dayan v. McDonald's Corp.* (1985), 138 Ill. App. 3d 367, 374-76, 485 N.E.2d 1188, 1193-94; Ill. Rev. Stat. 1985, ch. 26, par. 1—105(1).) In addition, as our discussion has shown, the lease agreement was received and accepted in Missouri and required that Willcott make his payments to SRC, a Missouri corporation, in Missouri. Under these circumstances, we believe that the nature, validity, interpretation and effect of the obligations created thereunder are governed by the law of Missouri, not Illinois. The Illinois usury statute is therefore inapplicable and should not have been allowed to stand either as a defense to SRC's claim or as a basis for Willcott's counterclaim. *Dayan v. McDonald's Corp.* (1985), 138 Ill. App. 3d 367, 374-76, 485 N.E.2d 1188, 1193-94.

■ That the disputed agreement is governed by Missouri law was not raised by appellant, and we believe that a reviewing court should extend its inquiry beyond the scope of arguments presented by counsel only with great circumspection. (*People ex rel. Pollution Control Board v. Lloyd A. Fry Roofing Co.* (1972), 4 Ill. App. 3d 675, 677, 281 N.E.2d 757, 759.) Nevertheless, Supreme Court Rule 366 (87 Ill. 2d R. 366) permits a reviewing court, in the exercise of its responsibility for a just result and for the maintenance of a sound and uniform body of precedent, to ignore considerations of waiver and decide a case on grounds not properly raised or not raised at all by the parties. (*City of Wyoming v. Liquor Control Com.* (1977), 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080, 1083; *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 609, 456 N.E.2d 958, 964.) Similarly, our supreme court has held that assumptions by the parties as to the interpretation and applicability of a statute cannot preclude a reviewing court from conducting an independent assessment of the statute and in appropriate cases holding contrary to those assumptions. (*People ex rel. Pollution Control Board v. Lloyd A. Fry Roofing Co.* (1972), 4 Ill. App. 3d 675, 677, 281 N.E.2d 757, 759, citing *City of Aurora ex*

*rel. Egan v. YMCA* (1956), 9 Ill. 2d 286, 137 N.E.2d 347.) We believe that this is a case where invocation of the foregoing principles is appropriate.

Because Willcott's counterclaim is based exclusively on the Illinois usury law, our finding that Illinois law does not apply requires that the circuit court's judgment in favor of Willcott on that counterclaim be reversed. As to SRC's complaint for recovery of the press and for damages, our review of the record persuades us that the circuit court denied SRC relief solely because of its erroneous belief that the Illinois usury statute applied to render the lease agreement unenforceable. Accordingly, the circuit court's judgment against SRC on its complaint must be vacated, and the case remanded for reconsideration under the proper legal standard.

Given that remand is necessary, there is one further issue we must address. The circuit court's judgment found that SRC and A. B. Dick were so closely interrelated and allied that they acted as a single entity. This issue was injected into the case by Willcott, who argued that the separate corporate entities of SRC and A. B. Dick should be disregarded, *i.e.*, that the corporate veil should be pierced, and that they should be treated as mere alter egos of one another. Although the circuit court apparently agreed with Willcott, the significance of its finding is not apparent. A. B. Dick was not named as a counter-defendant in Willcott's counterclaim. We see nothing to suggest that Willcott seeks any recovery against A. B. Dick, and the circuit court's judgment does not purport to impose liability on A. B. Dick. Moreover, no claim has been made that A. B. Dick and not SRC is the proper party to seek judicial enforcement of the lease agreement with Willcott.

Under these circumstances, the circuit court's finding seems irrelevant to the disposition of the case. It is also contrary to the manifest weight of the evidence. The present record indicates that the shareholders of SRC own all of the stock in A. B. Dick. (A. B. Dick's name has now been changed to Datamax, but the change was a mere formality. For the purposes of this discussion, we shall therefore refer to A. B. Dick only by its original name, even though the testimony regarding its operations sometimes designated it as Datamax.) Some, but not all, of the officers of SRC are also officers of A. B. Dick. In addition, A. B. Dick rents office space from SRC and stores some of its equipment in the same warehouse that SRC uses, but also has two additional warehouses of its own. These factors alone are insufficient to justify piercing the corporate veil.

Piercing a corporate veil is a task which courts should undertake

reluctantly. (*Walker v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 645, 649, 415 N.E.2d 1213, 1217.) The separate corporate entities of two corporations may not be disregarded merely because one owns the stock of the other or because the two share common officers (92 Ill. App. 3d 645, 649, 415 N.E.2d 1213, 1217), or occupy the same office space (*Ohio Tank Car Co. v. Keith Ry. Equipment Co.* (7th Cir. 1945), 148 F.2d 4, 6, *cert. denied* (1945), 326 U.S. 730, 90 L. Ed. 434, 66 S. Ct. 38). Rather, the party seeking to have the corporate entity disregarded must come forward with a substantial showing that one corporation is really a dummy or sham for another (*Walker v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 645, 649, 415 N.E.2d 1213, 1217), and it must appear that observance of separate existence would, under the circumstances, sanction a fraud or promote injustice (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 205, 427 N.E.2d 94, 101). No such showing has been made here. The circuit court's finding that SRC and A. B. Dick acted as a single entity is therefore erroneous and may not stand as a bar to SRC's recovery on remand.

For the foregoing reasons, we reverse the judgment of the circuit court of Madison County in favor of Willcott and against SRC on Willcott's counterclaim. We vacate the court's judgment against SRC and in favor of Willcott on SRC's complaint for recovery of the press, damages and attorney fees, and remand for further proceedings on SRC's right to recovery under its complaint in accordance with the principles set forth in this opinion.

Reversed in part; vacated and remanded in part.

KASSERMAN, P.J., and JONES, J., concur.