Christopher **HANLEY**, Plaintiff,

v.

**TRENDWAY CORPORATION,**
a Michigan Corporation,
Defendant.

No. 94 C 5406.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 26, 1996.

David L. Lee, Tomes, Lee & Dvorak, Chicago, IL, for Christopher Hanley.

Fred E. Schulz, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Trendway Corp.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff Christopher Hanley ("Hanley") brings this action to recover sales commissions allegedly owed him by Defendant Trendway Corporation ("Trendway"). Hanley's Amended Complaint alleges three theories of recovery: contract, restitution, and interference with prospective advantage. The Court previously dismissed all but the contract claim. Before the Court are Motions for Summary Judgment from both Hanley and Trendway.

### I. Background

Unless otherwise noted, the following facts are uncontroverted.

On September 5, 1989, Trendway contracted with Hanley to be its sales representative in Illinois. Hanley's contract with Trendway (the "Agreement") specified, *inter alia,* the commissions to which Hanley would be entitled in the event of his termination:

Upon termination, ... [Hanley] shall be entitled to receive commissions in accordance with this Agreement with respect to all orders received by [Trendway] prior to the effective date of termination as well as with respect to all orders subsequently received by [Trendway] with respect to projects then in process and approved in writing by [Trendway] in the exercise of its sole discretion as part of the termination process.

(Agreement ¶ 10.)

On August 16, 1991, Trendway terminated Hanley effective September 27, 1991; Hanley admits Trendway terminated the agreement in accordance with the Agreement termination procedure. In the termination letter, Trendway stated that in addition to commissions on orders received as of the termination date,

[i]n consideration of an amiable separation and the return of all Trendway materials by September 27, 1991, Trendway will accrue and pay Hanley Associates commissions on all orders received from September 27 until November 22, 1991.

(Def. Statement Facts, Exh. C; Pl. Statement Facts, Exh. B.)

On August 27, 1991, David C. Field, Trendway's Vice President, Sales and Marketing wrote a letter stating in part,

In the event there are projects for which you believe you should be compensated beyond the extended date of November 22 ... please provide me a list of these projects by September 6, 1991. I will review this list and advise you if any projects would be considered for commissions.

(Def. Statement Facts, Exh. F; Pl. Statement Facts, Exh. C.)

On September 12, 1991, Hanley responded with a letter listing four projects he had been "involved with for quite some time": (1) Methodist Board of Pensions ($1,000,000 list price); (2) U.S. Postal Service ($50,000); (3) Brookshire Lithographers ($130,000); and (4) Air National Guard ($100,000). (Def. Statement Facts, Exh F; Pl. Statement Facts, Exh. D.) Trendway did not approve any of these projects for commissions, in writing or otherwise, and has not paid commissions to Hanley with respect to any post-November 22, 1991 sales to the above-listed customers.

According to Hanley, Trendway has withheld its approval of the projects listed by Plaintiff in bad faith, thereby breaching the Agreement as well as a contract formed by the above-described exchange of letters.

## II. Standard for Motions for Summary Judgment

Summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of an essential element to its case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). All the evidence submitted must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

Once a properly supported motion for summary judgment has been filed, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). An issue of fact is genuine only if a jury could reasonably return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510. Only facts that might affect the outcome of the case are material. *Id.* Therefore, if the evidence provided by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

## III. Analysis

### A. Choice of Law

As an opening matter, the Court must determine what state's law applies in

this action.[1] As this is a diversity action, the Court applies Illinois choice-of-law principles in making this choice. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir.1991). The Agreement specifies that it "shall be governed by and interpreted and construed in accordance with the laws of the State of Michigan". (Agreement ¶ 12.) However, choice-of-law clauses are not always enforced by the courts; the Court also applies Illinois law to determine whether to enforce this particular choice-of-law clause. *Wood*, 942 F.2d at 426. In Illinois, a choice-of-law contract clause is generally enforceable. *Reighley v. Continental Ill. Nat'l Bank & Trust*, 390 Ill. 242, 248, 61 N.E.2d 29 (1945); *Sumner Realty Co. v. Willcott*, 148 Ill.App.3d 497, 101 Ill.Dec. 966, 968, 499 N.E.2d 554, 556 (1986); *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1081 (7th Cir.1986). As Hanley does not present any reason for the Court not to follow the general rule, and the Court itself sees no reason, the Court will apply Michigan law.

### B. Obligation under Original Contract

Under Michigan law, "the terms of the contract between the principal and sales representative shall determine when a commission becomes due." Mich. Comp. Laws § 600.2961(2). The Agreement clearly establishes when commissions become due in the event of Hanley's termination. Hanley is entitled to commissions with respect to (1) all orders received by Trendway prior to the effective date of termination, and (2) all orders subsequently received by Trendway with respect to projects then *in process and approved in writing* by Trendway in the exercise of its sole discretion as part of the termination process. (Agreement ¶ 10, emphasis added.)

This dispute relates solely to orders allegedly falling under the second provision. Hanley does not contend Trendway has failed to pay any commissions due under the first provision, for orders received prior to termination. In fact, Trendway presents evidence that, consistent with its August 16, 1991 letter, it paid commissions to Hanley on not just orders received by September 27, 1991, the termination date, but those received by November 22, 1991.

Hanley instead contends Trendway owes him commissions on orders allegedly received subsequent to November 22, 1991 from Methodist Board of Pensions, Illinois Air National Guard, and the United States Postal Service. Trendway denies it owes commissions because it did not approve in writing commissions for those projects. Hanley does not present any evidence of written approval for those projects, but instead claims Trendway withheld such approval in bad faith.

In order for post-termination commissions to be due on orders received after the effective date of termination, the contract requires that the project be approved in writing. Hanley argues that only the order must be approved, but this argument is without merit. The contract reads, in relevant part, that commissions will be owed "with respect to all orders subsequently received by [Trendway] with respect to projects then in process and approved in writing by [Trendway] in the exercise of its sole discretion as part of the termination process." Agreement ¶ 10. Although the language is somewhat clumsy, "approved in writing" unambiguously modifies "projects", not "orders". Beyond grammatical arguments, the Court notes that the provision would make little sense under Hanley's reading. Beyond dispute, the approval in question is required as part of the termination process. Presumably, the termination process concludes with the termination itself. As an order can only be approved after it is received and the contested provision is limited to orders received subsequent to the termination, an order could not

---

1. The Court applied Illinois law in its Memorandum Opinion and Order dated March 3, 1995. In the briefing of that Motion, neither party raised choice of law as an issue; accordingly, the Court applied the default choice of law, the law of the state in which it lies. *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir.1991). Therefore, the Court has not previously considered choice of law in this action and now considers it without heed to its previous application of Illinois law.

be approved under the provision as part of the termination process. Therefore, reading the provision as requiring approval of orders, rather than projects, is not the best reading of the provision. Accordingly, the Court finds that in order for commissions to be due under this provision, Trendway must have approved in writing the relevant project as part of the termination process.

■ Although the contract grants Trendway "sole discretion" in deciding whether to approve a project for commissions, Trendway is obligated to exercise this discretion in good faith. *Ferrell v. Vic Tanny Int'l, Inc.,* 137 Mich.App. 238, 357 N.W.2d 669 (1984); *Sims v. Buena Vista School Dist.,* 138 Mich.App. 426, 430, 360 N.W.2d 211, 213 (1984); *ParaData Computer Networks v. Telebit Corp.,* 830 F.Supp. 1001, 1005 (E.D.Mich.1993). The Michigan Supreme Court has defined "bad faith" as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Commercial Union Ins. Co. v. Liberty Mutual Ins. Co.,* 426 Mich. 127, 136, 393 N.W.2d 161, 164 (1986). However, the duty of good faith does not require Trendway to be reasonable in determining whether to approve a project. *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 280 (7th Cir.1992) (applying Illinois law). Instead good faith requires Trendway must "avoid taking advantage of gaps in [the Agreement] ... in order to exploit the vulnerabilities that arise when contractual performance is sequential rather than simultaneous." *Id.* Whether Trendway acted in good faith is an issue of fact. *In re Green Charitable Trust,* 172 Mich.App. 298, 315, 431 N.W.2d 492, 499 (1988). "Usually the question of whether a party has acted in good faith is one for the jury, but summary judgment may be proper if the plaintiff cannot offer evidence suggesting bad faith." *Maida v. Retirement & Health Services,* 36 F.3d 1097 (6th Cir.1994).

■ Hanley argues Trendway has acted in bad faith, having taken advantage of its position by denying Hanley commissions for sales that were "in the pipeline" due to his efforts. Hanley testifies that he was personally involved in efforts to sell Trendway products in each project in question. Additionally, he testifies, the dealers pursuing the sales were dealers he trained and put in place. Thus, he alleges he had "projects in process" which Trendway should have considered approving for commissions pursuant to the Agreement.

Hanley and Trendway dispute whether Hanley, in fact, was involved in the projects in question. The parties provide conflicting evidence, largely deposition testimony and affidavits of Hanley, individuals associated with the various projects, and employees of Trendway, regarding whether Hanley was personally involved in each of the disputed projects. In considering the parties' cross-motions for summary judgment, the Court views the evidence in the light most favorable to the non-movant. As both parties have produced evidence supporting their respective positions on this issue, the Court finds that whether Hanley was involved in the contested projects is a genuine issue of material fact.

Assuming Hanley was involved in the projects, Hanley has also created a genuine issue of fact as to whether Trendway was obligated to consider Hanley's request for commissions. If Trendway was so obligated, it was obligated to consider the request in good faith. Each side has presented sufficient evidence to establish that the issue of whether Trendway exercised its discretion in good faith is a genuine issue of fact.

Trendway produces a variety of evidence to demonstrate it acted in good faith. Trendway's evidence shows that on August 15, 1991, the day before Trendway terminated Hanley, Hanley did not claim to be working on any of the disputed projects when he was asked on what projects he was working. Field Dep. at 49. Trendway's Vice President of Sales and Marketing, David C. Field ("Field"), also testifies that in his inquiry into the matter, he could not confirm that Hanley was actively working on these projects. *Id.* Furthermore, Trendway shows that it paid commissions on completed sales arising out of the projects to Hanley's successor as sales representative. *Id.* at 65–66. Therefore, Trendway did not profit by pocketing the commissions itself, the type of opportunism

cited by the Seventh Circuit as evidencing bad faith. *River Valley Cookies, Ltd.,* 970 F.2d at 280.

On the other hand, Hanley presents evidence that Trendway failed to act in good faith. Hanley's evidence indicates Trendway's investigation of whether Hanley was working on the projects was cursory at best. Field Dep. at 51–52. Additionally, Field suggests that the only evidence of a project that Trendway would have found acceptable was a completed order by the date of termination.

Q. What sort of knowledge would you have accepted as sufficient to pay commissions?

A. An order that we had received in accordance with his contract.

Q. Any other type of knowledge?

A. No.

Field Dep. at 49. One could argue that such a standard amounts to Trendway using it so as to effectively eliminate the contractual provision calling for commissions for projects in process. Trendway would have been using its discretion to eliminate any right to commissions the contract may have afforded Hanley under the project-in-process clause. Another provision, after all, called for commissions on orders received prior to termination. Such opportunism would suggest bad faith.

Accordingly, whether Trendway employed good faith in exercising its discretion in approving the disputed projects for commissions is a genuine issue of material fact. Therefore, neither Trendway nor Hanley is entitled to judgment as a matter of law.

### C. Obligation under Alleged Settlement Agreement

Both parties attach great significance to the letters and oral communications between Trendway and Hanley from August 16 to September 27, 1991.

■ Trendway contends the letters amount to a settlement agreement between the parties, resolving all outstanding matters, including this dispute. Trendway contends its August 16, 1991 letter constituted a settlement offer, offering to pay commissions on orders received through November 22, 1991

"[i]n consideration of an amiable separation." Trendway argues "an amiable separation" is equivalent to "settlement of all issues between the parties." Pl. Memo. Resp. Summ. J. Exh. M. Hanley, however, denies it was agreeing to settle all outstanding matters when it accepted commissions on orders received by Trendway between September 27, 1991 and November 22, 1991.

The Court finds the communications beginning August 16, 1991 do not constitute a settlement agreement. Although Trendway claims the August 16, 1991 letter was a settlement offer, its own letter of August 27, 1991 belies that claim. In that letter, Trendway invited Hanley to submit a list of projects to be considered for commissions. Such an invitation is inconsistent with the claim that the August 16, 1991 letter was an offer to settle all outstanding claims. Furthermore, in none of the letters does Trendway even suggest the extended commission period is intended to be a comprehensive settlement. Absent any showing that both parties intended to enter a settlement agreement, the Court cannot find that such an agreement was actually entered.

■ But even if the August 16, 1991 letter was a settlement offer, the terms of the deal, as amended in the course of the communications, do not preclude this action. The August 27, 1991 letter modifies the August 16, 1991 "offer" so that the offer does not preclude a dispute over Hanley's list of commissionable projects. In the August 27 letter, Trendway invited Hanley to submit a list of projects for consideration; arguing that a dispute regarding that list is barred by the terms of that letter is disingenuous. Furthermore, Hanley's response does not indicate that he accepted Trendway's original "offer" barring commissions on the disputed projects. Instead, his letter of September 12, 1991 not only listed the projects but also suggests a "counteroffer": a six month extension of the November 22, 1991 cutoff date. Accordingly, even if the Court were to interpret the August 16, 1991 letter as a settlement offer, the parties further communications modified the terms of the settlement so as to not preclude Hanley's present claim.

Hanley, on the other hand, contends the letters constitute a new contract between the parties, obligating Trendway to pay Hanley commissions through November 22, 1991.

 The Court also finds that the letters do not constitute a new contract for want of consideration. Hanley argues his return of the materials and submission of the list of projects was consideration for the extended commission period.[2] However, return of the material is not consideration under the pre-existing duty rule, the Agreement already calling for Hanley to promptly return the materials. *Keene Corp. v. International Fidelity Ins. Co.,* 736 F.2d 388 (7th Cir.1984). Additionally, submission of a list of projects is not consideration. Submitting the list is neither a detriment to Hanley nor a benefit to Trendway, but rather just the opposite. Hanley would submit such a list to seek commissions for those projects, a benefit to him and detriment to Trendway. *See Serpe v. Williams,* 776 F.Supp. 1285 (N.D.Ill.1991). In any case, the original Agreement provides for submission of the list of projects, so this alleged duty also runs afoul of the pre-existing duty rule. As Hanley does not provide any consideration, the letters cannot constitute a contract under Hanley's interpretation of the events. *Kafka v. Bellevue Corp.,* 999 F.2d 1117 (7th Cir. 1993).

Accordingly, the Court finds that the communications between August 16, 1991 and September 27, 1991 do not constitute a settlement agreement or a contract.

## IV. Conclusion

For the aforementioned reasons, the Court finds that both Hanley and Trendway have established genuine issues of material fact. Therefore, the Court finds that neither Hanley nor Trendway is entitled to judgment as a matter of law and DENIES both cross-motions for summary Judgment.

**2.** Hanley does not argue he was relinquishing any possible legal action, which would constitute consideration.