BARBARA MARIE GASS, as Special Adm'r of the Estate of Patricia A. Pike, Deceased, Plaintiff-Appellee, v. ANNA HOSPITAL CORPORATION, d/b/a Union County Hospital, Defendant-Appellant (Community Health Systems, Inc., Defendants; Raja C. Maddipoti, of Prairie Cardiovascular Consultants Ltd., Respondent in Discovery).

Fifth District   No. 5—08—0405

Opinion filed June 23, 2009.

Michael F. Dahlen and Kara L. Jones, both of Feirich/Mager/Green/Ryan, of Carbondale, for appellant.

R. Courtney Hughes, of Hughes Law Firm, of Carbondale, for appellee.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

The plaintiff, Barbara Marie Gass, as the special administrator of the estate of Patricia A. Pike, deceased, filed a medical negligence complaint in the circuit court of Williamson County against the defendants, Anna Hospital Corp. (AHC), an Illinois corporation doing business as Union County Hospital; Community Health Systems, Inc. (CHS), a Delaware corporation; and Dr. Dale Vorbrich. The complaint was for the decedent's wrongful death. The plaintiff named Dr. Raja C. Maddipoti as a respondent in discovery. The circuit court denied AHC's

motion to transfer venue from Williamson County to Union County. We granted AHC's petition for leave to appeal the circuit court's order. Dr. Vorbrich's petition for leave to appeal was stricken for a lack of jurisdiction. We reverse and remand.

## FACTS

On November 19, 2007, the plaintiff filed her original two-count complaint in Williamson County against Dr. Vorbrich and AHC for failing to properly diagnose and treat the decedent when she arrived at the Union County Hospital emergency room complaining to the nursing staff and Dr. Vorbrich of chest pain and shortness of breath. In her caption, the plaintiff identified AHC as "a subsidiary of Community Health Systems Professional Services Corporation." Because AHC did not have an office or provide patient care in Williamson County and because Dr. Vorbrich resided in Union County and AHC's hospital was located in Union County, Dr. Vorbrich and AHC filed motions to transfer venue to Union County. At a hearing on February 25, 2008, the plaintiff made an oral motion for leave to file an amended complaint to add CHS as a defendant, and the circuit court granted the plaintiff's motion.

On February 6, 2008, the plaintiff filed an affidavit of David Youngberg, a licensed private investigator, and attached exhibits, such as incorporation verifications, press releases, security exchange commission forms, and Web site printouts, to establish that CHS acquired and wholly owned as subsidiaries AHC and Marion Hospital Corp. (MHC), doing business as Heartland Regional Medical Center in Williamson County, Illinois. Youngberg also stated that AHC, MHC, and CHS shared corporate executives, in that Martin Schweinhart was AHC's corporate president and CHS's senior vice president of operations and that Rachel Seifert was AHC's and MHC's corporate secretary and CHS's senior vice president, secretary, and general counsel.

On March 5, 2008, the plaintiff filed a five-count, first amended complaint, adding CHS as a defendant and again alleging that the decedent received negligent medical care and treatment from Dr. Vorbrich and the nursing staff in the emergency room at Union County Hospital. In the amended complaint, the plaintiff alleged that CHS wholly owned AHC and MHC; that CHS operated and administered AHC and MHC through its own corporate executives; that the business relationship and stock ownership between CHS and AHC "were ostensibly such that the two companies were not truly separate and distinct entities but rather had interlocking executives running both companies"; and that CHS's ownership and acquisition of AHC, along with their common executives, were "indicative of a unity of interest

and ownership between the two companies whereby [CHS] was the dominant share holder and operator of [AHC, doing business as Union County Hospital]."

Dr. Vorbrich and AHC again filed motions to transfer. In AHC's motion, it asserted that because the plaintiff could not establish the factors necessary to pierce the corporate veil of AHC to establish liability against CHS or of MHC to establish venue in Williamson County, CHS was not a proper defendant and the action was improperly venued in Williamson County. AHC argued that because all the transactions which formed the basis of the plaintiff's suit had occurred in Union County and because both proper defendants, Dr. Vorbrich and AHC, resided in Union County, the only proper venue for the plaintiff's suit was Union County.

In the plaintiff's response, the plaintiff argued that CHS was a proper defendant based upon the vicarious liability of CHS, as a parent agency, for the alleged medical negligence. The plaintiff alleged that CHS owned, operated, and controlled AHC's Union County Hospital and that CHS did business in Williamson County through its ownership, operation, and control of MHC's Heartland Regional Medical Center. The plaintiff alleged that "the circumstances of ownership between [CHS] and its subsidiaries, [AHC] and [MHC], is [sic] such that a unity of interest and ownership exists whereby" CHS may be responsible for the torts of its subsidiary corporate employees.

AHC submitted in the record the affidavit of Ben Fordham, the vice president and senior litigation counsel for Community Health Systems Professional Services Corp. In the affidavit, Fordham attested that CHS was a holding company with no employees and its shares were publicly traded on the New York Stock Exchange. CHS was the only member of and owned all the outstanding ownership interest of Community Health Investment Company, LLC. Community Health Investment Company, LLC, owned, among other assets, all the issued and outstanding corporate stock of AHC and MHC.

Fordham stated in the affidavit that CHS maintained no control over AHC or MHC, that CHS did not operate the hospitals, that CHS did not control the day-to-day operations of the hospitals, and that CHS did not control disputes concerning medical staff. Fordham stated that such functions were the responsibility of AHC and MHC as delegated to each hospital's board of trustees.

Fordham stated that CHS maintained accounting records separate from those of the hospitals and maintained separate corporate minutes and records. Fordham stated that the patients treated at the hospitals pay the hospitals, not CHS, and that CHS maintained its own banking relationships. Fordham asserted that neither AHC nor MHC was

designated as an agent for CHS and that CHS had not diverted assets from the hospitals to the detriment of any creditors.

Fordham further stated that there was no overlap between CHS's board of directors and AHC's board of trustees. Fordham stated that CHS did not make clinical decisions regarding patients at the hospitals and, specifically, did not make any clinical decisions regarding the decedent's care. Fordham attested that CHS did not employ Dr. Vorbich, Dr. Vorbich was not an agent of CHS, and CHS was not involved in credentialing or supervising Dr. Vorbich. Fordham stated that CHS also did not employ the nursing staff at the hospitals and was not involved in supervising the nursing staff at the hospitals.

In a docket entry dated July 7, 2008, the circuit court held that AHC had not proven that venue in Williamson County was improper. See 735 ILCS 5/2—101 (West 2006). The circuit court also denied the motion to transfer based on the doctrine of *forum non conveniens*. On September 29, 2008, we granted AHC's petition for leave to appeal.

## ANALYSIS

"The determination of proper statutory venue raises separate questions of fact and law because it necessarily requires a trial court to rule on the legal effect of its factual findings." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153-54 (2005). "A trial court's findings of fact will not be disturbed on review unless those findings are against the manifest weight of the evidence." *Corral*, 217 Ill. 2d at 154. The trial court's decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Corral*, 217 Ill. 2d at 155. "After reviewing the trial court's factual findings, we review the legal effect of the trial court's conclusions *de novo*." *Corral*, 217 Ill. 2d at 155.

It is the defendant's burden to prove that the plaintiff's venue selection was improper. *Corral*, 217 Ill. 2d at 155. The defendant must provide specific facts to support a clear right to the relief it requests. *Corral*, 217 Ill. 2d at 155. Doubts arising from inconsistencies or inadequacies of the record will be resolved against the defendant. *Corral*, 217 Ill. 2d at 155.

The plaintiff in the present case does not assert that the transaction arose in Williamson County. See 735 ILCS 5/2—101 (West 2006) (an action must be commenced in the county where the cause of action arose or where the defendant resides). Instead, the plaintiff asserts that CHS, once MHC's corporate veil is pierced, resides in Williamson County because MHC's Heartland Regional Medical Center is an "other office" that is "doing business" in Williamson County. See

735 ILCS 5/2—102(a) (West 2006) (any private corporation is a resident of any county in which it has its registered office or other office or is doing business). The plaintiff acknowledges that to obtain a judgment against CHS, however, she is also required to pierce AHC's corporate veil.

■ The Illinois venue statute provides, in pertinent part, that an action "must be commenced *** in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county." 735 ILCS 5/2—101(1) (West 2006). "The legislature joined together three requisites in order to bring the case within the scope of the statute: good faith, probable cause, and a joinder not made for the sole purpose of conferring venue." *Green v. Unity Container Corp.*, 7 Ill. App. 2d 215, 220-21 (1955). " 'Good faith' is hardly capable of an exact definition; it consists of an honest intention to abstain from taking any unconscientious advantage of another, even through forms and technicalities of the law." *Green*, 7 Ill. App. 2d at 221. " 'Probable cause' is a reasonable belief that the claim on which the suit is brought is valid." *Green*, 7 Ill. App. 2d at 221; see *Webb v. Morgan*, 176 Ill. App. 3d 378, 385 (1988).

AHC argues that it has presented sufficient facts to show that the plaintiff is unable to pierce its corporate veil and obtain a judgment against CHS. AHC argues, therefore, that it has met its burden to demonstrate that the plaintiff did not join CHS in good faith and with probable cause for the purpose of obtaining a judgment against it but joined CHS solely for the purpose of fixing venue in Williamson County. See 735 ILCS 5/2—101(1) (West 2006). Recognizing that it is AHC's burden to show that the plaintiff did not join CHS in good faith and with probable cause for the purpose of piercing AHC's corporate veil and obtaining a judgment against CHS, the plaintiff argues that she need only allege that there is a unity of interest and ownership between AHC, CHS, and MHC to establish venue in Williamson County. The plaintiff argues that, although CHS may not control AHC's actions directly, because the plaintiff has shown that CHS wholly owned AHC and shares corporate officers with AHC, she has demonstrated that CHS has a unity of interest with AHC and that, therefore, AHC's motion to transfer venue to Union County was properly denied.

■ "[B]y definition, a parent corporation is a corporation that has working control of the subsidiary corporation through stock ownership. See 18 Am. Jur. 2d *Corporations* §41 (2004)." *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 503 (2005). A parent corporation is

not liable for the acts of its subsidiaries. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 282 (2007). It is a fundamental principle that a corporation is a legal entity that is separate and distinct from its shareholders, directors, and officers and from other corporations with which it may be connected. *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 204 (1981). Stock ownership alone in one corporation by another neither creates an identity of corporate interest between the two companies nor renders the stockholding company the owner of the property of the other nor creates the relation of principal and agent, representative, or alter ego between the two. *Main Bank of Chicago*, 86 Ill. 2d at 204; *South Side Bank v. T.S.B. Corp.*, 94 Ill. App. 3d 1006, 1010 (1981); *Walker v. Dominick's Finer Foods, Inc.*, 92 Ill. App. 3d 645, 649 (1980).

In addition, the use of common officers and directors does not render one corporation liable for the obligations of another. *Main Bank of Chicago*, 86 Ill. 2d at 204; see also *Sumner Realty Co. v. Willcott*, 148 Ill. App. 3d 497, 502 (1986). "These practices are common and exist in most parent-subsidiary relationships." *Main Bank of Chicago*, 86 Ill. 2d at 204-05. It is entirely appropriate for a parent corporation's directors to serve as directors of its subsidiary, and that fact alone does not expose the parent corporation to liability for its subsidiary's acts. *Forsythe*, 224 Ill. 2d at 283, 292. Directors and officers holding positions with a parent corporation and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership. *Forsythe*, 224 Ill. 2d at 292-93. "[I]t should be presumed that directors are wearing their 'subsidiary hats,' rather than their 'parent hats,' when acting for the subsidiary." *Forsythe*, 224 Ill. 2d at 293, citing *United States v. Bestfoods*, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 61, 118 S. Ct. 1876, 1888 (1998).

■ A subsidiary, as a separate and distinct legal entity, will be treated as the alter ego of the parent, and the corporate veil pierced, where the subsidiary is "so organized and controlled, and its affairs so conducted by a parent, that observance of the fiction of separate identities would sanction a fraud or promote injustice under the circumstances." *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 172-73 (1994); see *Walker*, 92 Ill. App. 3d at 649. If one corporation is merely a dummy or sham for another corporation, the distinct corporate entities will be disregarded and the two corporations will be treated as one. *Walker*, 92 Ill. App. 3d at 649.

" 'The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.' " *Fontana*, 362 Ill. App. 3d at 500, quoting *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 527 (2002). "One who seeks to have

the courts apply an exception to the rule of separate corporate existence \*\*\* must seek that relief in his pleading and carry the burden of proving actual identity or a misuse of corporate form which, unless disregarded, will result in a fraud on him." *South Side Bank*, 94 Ill. App. 3d at 1010.

■ "[P]iercing a corporate veil is a task which a court undertakes reluctantly since there is a presumption of corporate regularity \*\*\*." *Walker*, 92 Ill. App. 3d at 649. A party seeking to pierce the corporate veil must make a substantial showing that (1) there is such a unity of interest and ownership that the separate personalities of the corporations no longer exist and (2) circumstances exist so that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Fontana*, 362 Ill. App. 3d at 500; *Sumner Realty Co.*, 148 Ill. App. 3d at 502; *South Side Bank*, 94 Ill. App. 3d at 1009.

■ "In determining whether the 'unity of interest and ownership' prong of the piercing-the-corporate-veil test is met, a court generally will not rest its decision on a single factor, but will examine many factors, including: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders." *Fontana*, 362 Ill. App. 3d at 503. The second prong of the test requires an inquiry into whether there is an element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest. *Fontana*, 362 Ill. App. 3d at 507.

■ With regard to the unity-of-interest factors, AHC presented facts in the record to establish that CHS maintained separate accounting records from AHC and MHC; that the patients who were treated at either hospital made payments to the hospital, not CHS; and that CHS maintained its own banking relationships. Likewise, CHS maintained separate corporate minutes and records from those kept by either AHC or MHC, and the corporate entities convened separate meetings of their respective boards of directors. CHS did not control the day-to-day operations of the hospitals, did not control disputes concerning medical staff, and was not involved in credentialing or supervising the doctors or in supervising the nursing staff at either hospital. Neither AHC nor MHC was designated as an agent for CHS.

CHS did not make clinical decisions regarding patients at the hospitals and, specifically, did not make any clinical decisions regarding the decedent's care. CHS did not divert assets from the hospitals to the detriment of any creditors. There was also no overlap between CHS's board of directors and AHC's board of trustees.

In contrast, the plaintiff submitted the Youngberg affidavit to establish that AHC and MHC were wholly owned subsidiaries of CHS and that the three corporations shared corporate officers. However, the law is established that neither stock ownership nor the use of common officers renders one corporation liable for the obligations of another. See *Main Bank of Chicago*, 86 Ill. 2d at 204.

To support her proposition that a parent subsidiary can be held liable for the actions of its subsidiaries and that she need only allege a unity of interest and ownership between the corporations, the plaintiff cites *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681 (2007), and *Edwards v. Chicago & Northwestern Ry. Co.*, 79 Ill. App. 2d 48 (1967). In both of these cases, however, the plaintiff alleged facts involving the unity-of-interest factors and sufficiently pled that an injustice would result from the recognition of the separate corporate entities. See *Pederson & Houpt, P.C.*, 376 Ill. App. 3d at 682-83 (the plaintiff sought payment for legal services against the defendants, who sought to evade payment of their indebtedness by moving assets away from the original indebted companies); *Edwards*, 79 Ill. App. 2d at 53-54 (the plaintiffs alleged in their complaints that the defendant railway company performed acts and made statements to induce the plaintiffs from filing suits against the coal company during the two-year period within which suits could be maintained against the dissolved corporation). Here, the plaintiff alleged in her complaint and presented in the Youngberg affidavit conclusory statements that CHS's ownership and acquisition of AHC, along with their common executives, were indicative of a unity of interest and ownership between the companies. The plaintiff failed to allege or present facts involving the unity-of-interest factors or the injustice that would result from the recognition of the separate corporate entities. See *South Side Bank*, 94 Ill. App. 3d at 1010 (one who seeks to have courts apply an exception to the rule of separate corporate existence must seek that relief in his pleading); see also *Hills of Palos Condominium Ass'n v. I-Del, Inc.*, 255 Ill. App. 3d 448, 480 (1993) (allegations that the parent dominated the subsidiary and there was such a unity of interest between the two that the subsidiary was merely the alter ego of the parent amounted to conclusory statements unsupported by allegations of specific facts upon which the conclusions rested and, therefore, were insufficient to withstand a motion to dismiss).

The plaintiff was not required at this stage of litigation to make the substantial showing required to pierce AHC's corporate veil and establish CHS's liability. The plaintiff was also not required to plead and prove that her selection of Williamson County for the filing of this action was proper. However, AHC, as the movant, met its burden to prove that the plaintiff's selection of venue was improper by setting out specific facts to show a clear right to the relief asked for. See *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987). AHC established facts that would prevent a judgment against CHS and met its burden of showing that the plaintiff failed to join CHS in good faith and with probable cause for the purpose of obtaining a judgment against it but, instead, joined CHS solely for the purpose of fixing venue in Williamson County. 735 ILCS 5/2—101(1) (West 2006); *Adkins v. Chicago, Rock Island & Pacific R.R. Co.*, 54 Ill. 2d 511, 516-17 (1973) (because the defendants' liability in tort to the plaintiff was not clear as a matter of substantive law, the court was not convinced that the individual defendants were joined with probable cause and in good faith for the purpose of obtaining a judgment against them).

The plaintiff argues that transferring venue is premature because questions of fact that can only be explored through discovery exist regarding the exact nature of the relationship between the corporations. The plaintiff in *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 369 (1983), made a similar argument. In *Wieser*, 98 Ill. 2d at 369, the plaintiff claimed that a *forum non conveniens* dismissal upon the record as it stood would unfairly penalize her because she had not yet commenced discovery. Noting that the plaintiff did not request that the circuit court defer ruling on the defendant's motion until she had completed discovery, the supreme court found her argument that she was disadvantaged unconvincing. *Wieser*, 98 Ill. 2d at 369-70. Although *Wieser* involved a venue change based on the doctrine of *forum non conveniens*, we find it persuasive here.

Accordingly, as AHC argues, the circuit court had the discretion to allow discovery to proceed to determine whether venue was proper. See *Winn v. Mitsubishi Motor Manufacturing of America, Inc.*, 308 Ill. App. 3d 1054, 1058 (1999). The plaintiff did not request that the circuit court defer its ruling on the venue motion until she had completed discovery. Accordingly, she cannot complain that a venue ruling is premature because of a lack of discovery. See *Wieser*, 98 Ill. 2d at 369-70.

In sum, the record reveals that CHS was not a defendant joined with probable cause for the purpose of obtaining a judgment against it and that CHS's presence in this lawsuit was merely to establish venue in Williamson County. The facts presented to the circuit court establish

that the transaction did not occur in Williamson County and that none of the defendants who were properly joined in this case reside in Williamson County. Therefore, AHC met its burden of establishing that venue is improper in Williamson County. We reverse the circuit court's decision finding that venue was proper in Williamson County.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed, and the cause is remanded to the circuit court with directions to enter an order granting AHC's motion to transfer venue to Union County.[1]

Reversed; cause remanded with directions.

WELCH and CHAPMAN, JJ., concur.

---

[1]At oral argument, AHC stated that Dr. Maddipoti was now a named defendant in a separate suit filed in Williamson County. This fact is not a part of the record on appeal; therefore, we did not consider it for purposes of our decision.