LABORERS' PENSION FUND,
et al., Plaintiffs,

v.

LAKE CITY JANITORIAL, INC.,
et al., Defendants.

Case No. 10 C 1659.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 27, 2010.

Christina Katherine Krivanek, Laborers' Pension Fund, Amy Nicole Carollo, John S. Hamada, Office of the Fund Counsel,

Laborers' Pension and Welfare, Jerrod V. Olszewski, Patrick T. Wallace, Office of Fund Counsel, Chicago, IL, for Plaintiffs.

General Laborers' District Council of Chicago and Vicinity, pro se.

Joseph Patrick Berglund, Kenneth Michael Mastny, Berglund & Mastny, P.C., Oak Brook, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER[1]

SIDNEY I. SCHENKIER, United States Magistrate Judge.

On May 28, 2010, plaintiffs—Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds"); James S. Jorgensen, Administrator of the Funds; and General Laborers' District Council of Chicago and Vicinity (the "Union")—filed a complaint against Lake City Janitorial, Inc. ("LCJ"), an Illinois corporation, for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"); against KB Building Services Inc. ("KB") as the alter ego of LCJ; and against James A. Busby, the owner of these corporations, for common law fraud.

Specifically, the Funds allege that LCJ violated ERISA and Section 301(a) of the LMRA because it failed: to pay employee benefit contributions (Count I) and union dues (Count II); to submit reports and pay employee benefit contributions (Count III); and to submit requested audits (Counts IV and V). The Funds seek to hold KB liable as the alter ego of LCJ (Count VII), because Mr. Busby allegedly used KB to cover up and carry out the alleged ERISA and LMRA violations. Additionally, the Funds allege common law fraud against Mr. Busby in his individual capacity (Count VI), because he allegedly participated in a scheme to deny the Funds and the Union benefit contributions and dues in three overarching ways: by "knowingly and intentionally" (1) submitting false records to the Funds; (2) paying employees through KB to avoid paying required contributions and dues; and (3) failing to report hours of covered work performed by LCJ employees to avoid paying contributions and dues (doc. # 32: Compl. at ¶¶ 36–39).[2] Plaintiffs seek to recover delinquent contributions and dues owed by LCJ and KB, as well as interest, damages, litigation costs, and other legal and equitable relief the Court deems appropriate. (*Id.* at ¶¶ 58, 83). Finally, plaintiffs seek to pierce the corporate veil and to have Mr. Busby held personally liable for the delinquent amounts and damages owed to plaintiffs by LCJ and KB (Count VIII).

Mr. Busby has moved to dismiss with prejudice Counts VI and VIII—the only claims against him—for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to dismiss them for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) (doc. # 45: Mot. to Dismiss at 1). For the following reasons, we deny Mr. Busby's motion.

### I.

 Rule 12(b)(6) requires dismissal if the allegations in the complaint, taken as

---

1. On August 12, 2010, by consent of all parties and pursuant to Local Rule 73.1(b), the Executive Committee reassigned this case to this Court for all proceedings, including entry of final judgment (doc. # 40).

2. All references to "Compl." or "Complaint" refer to the First Amended Complaint, the most recent complaint.

true and with all reasonable inferences drawn in favor of the party making the claim, do not state a claim for which legal relief can be granted. Fed.R.Civ.P. 12(b)(6). To determine if the allegations are sufficient to state a claim, a reviewing court must determine if they make the asserted claim "plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Although the material facts alleged must be taken as true and construed favorably toward the plaintiff, this rule does not apply to legal conclusions, supported only by conclusory statements. *Id.*

■ Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). In other words, the plaintiff must plead the "who, what, when, where, and how," of the alleged fraud. *Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 401 (7th Cir.2009) (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). The heightened pleading requirement of Rule 9(b) serves several important purposes: "(1) to inform the defendants of claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *United States SEC v. Benger,* 697 F.Supp.2d 932, 937 (N.D.Ill.2010) (internal quotations and citations omitted).

## II.

The following facts alleged in the Complaint are those that we consider material to Mr. Busby's motion, and that we take as true for purposes of the present motion. The Funds are multiemployer benefit plans as defined by ERISA, established and maintained according to their respective Agreements and Declarations of Trust (Compl. at ¶ 3). LCJ is an Illinois corporation and an employer within the meaning of ERISA and the LMRA (*Id.* at ¶ 5). Mr. Busby is LCJ's owner, president and/or managing officer/director (*Id.* at ¶¶ 6, 40). KB is also an Illinois corporation and an employer under ERISA and the LMRA (*Id.* at ¶ 7). Mr. Busby is also the owner, managing officer and/or director of KB (*Id.* at ¶¶ 8, 67).

LCJ and the Union—a labor organization under the LMRA—are parties to successive collective bargaining agreements ("CBAs"), the latest of which became effective on June 1, 2006 (Compl. at f 9). Under the respective Agreements and Declarations of Trust and the CBAs, LCJ must make contributions on behalf of its employees for pension and health and welfare benefits to the Funds, and must pay dues to the Union (*Id.* at ¶ 11). LCJ must submit monthly remittance reports identifying the employees covered under the CBA and the amount of contributions to be remitted to the Funds on behalf of each covered employee (*Id.*). Contributions which are not submitted in a timely fashion are assessed twenty percent liquidated damages plus interest (*Id.*). LCJ is also required to submit its books and records to the Funds for audits, as well as to maintain a surety bond to insure future wages, pension and welfare contributions (*Id.* at ¶¶ 12–13).

In Count I of the Complaint, plaintiffs allege that LCJ's failed to submit contributions to the Funds in violation of Section

15 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185 (Compl. at ¶ 17). The Funds allege that LCJ failed to submit a total of $84,026.90 in contributions to the various Fluids for the audit period of September 1, 2006, through March 31, 2009 (Compl. at ¶ 14). The Funds calculated the total liquidated damages on the delinquent contributions to be $16,666.91 (*Id.* at ¶ 15). In addition, the Funds allege that LCJ is liable for $1,060.45 in audit costs during the relevant time period (*Id.* at ¶ 16).

In Count II of the Complaint, plaintiffs allege that LCJ failed to withhold, report, and forward $5,186.37 in Union dues that were deducted or should have been deducted from its employees' wages during the audit period of September 1, 2006, through March 31, 2009 (Compl. at ¶ 21). Under the CBA, untimely dues and dues reports are assessed ten percent liquidated damages, calculated by the Funds to be $518.64 (*Id.* at ¶ 22). In Counts III, IV, and V, the Funds allege that LCJ violated ERISA and the LMRA for failure to submit reports and/or contributions to the Funds for the time period of January 2010 forward, and for failure to submit all its books and records for a requested audit for the period from April 1, 2009 forward (*Id.* at ¶¶ 25, 31, 33).

The Funds bring Count VI against Mr. Busby individually "because of his involvement in a scheme to deprive the Funds of benefit contributions and the Union of required dues" (Compl. at ¶ 36). Plaintiffs allege that "in order to avoid benefit contribution and dues' liability," Mr. Busby, as owner of LCJ, "knowingly and intentionally" submitted false books and records to the Funds, paid LCJ employees through KB, and failed to report hours of covered work performed by LCJ employees (*Id.* at ¶¶ 37–40). Plaintiffs allege that Mr. Busby's alleged fraud to avoid benefit contributions was demonstrated in several ways.

*First,* two LCJ employees received a single paycheck for work performed by both (*Id.* at ¶ 42). *Second,* Mr. Busby altered the payee and check endorsement signature on multiple checks, of which plaintiffs attached copies to their Complaint (*Id.* at ¶¶ 43–44). *Third,* plaintiffs allege that Mr. Busby paid one employee in the form of checks made out to a company rather than to the individual (*Id.* at ¶¶ 49–50). Fourth, Mr. Busby provided the Funds with false bank statements from LCJ supported by allegedly false documentation for the September 1, 2006, through March 31, 2009, audit period, including misrepresentations of the number of hours worked by employees who performed covered work under the CBAs (*Id.* at ¶¶ 45–48). Plaintiffs maintain that the individuals whose names were fraudulently removed from the altered checks performed covered work during the September 1, 2006, through March 31, 2009 audit period, and that Mr. Busby removed their names from the checks in order to avoid reporting the hours they worked and payment earned so as to avoid benefit contribution and dues' liability (*Id.* at ¶¶ 48, 51–53). Plaintiffs allege that they calculated the amounts of benefit contributions and dues owed for the September 1, 2006, through March 31, 2009 audit period based on Mr. Busby's alleged misrepresentations, resulting in them and the Union being deprived of required benefit contributions, dues, income, and information (*Id.* ¶¶ 54–56; Exs. B, C).

In Count VII, the Funds seek to impose alter ego or single employer liability on KB because KB and LCJ share equipment, employees, and their owner/manager (Mr. Busby); perform the same type of work; use the same business location; have the same supervisors or management personnel; and commingle their funds (Compl. at ¶¶ 59–71). In addition, plaintiffs ask the Court to pierce the corporate veil (Count VIII) as to Mr. Busby individu-

ally because he allegedly commingled his personal assets with those of LCJ and KB and shifted LCJ assets to KB to avoid his obligations to the Funds and the Union (*Id.* at ¶¶ 73–75). Moreover, plaintiffs allege that Mr. Busby directed KB employees to perform covered work subcontracted to LCJ, and used KB's bank account to pay LCJ employees (*Id.* at ¶¶ 77, 81). Plaintiffs allege that LCJ and KB are "undercapitalized in that both are unable to pay the contributions, dues and wages owed to their employees and to Funds, and that neither company 'observe[d] corporate formalities' " (*Id.* at ¶¶ 78–79).

For Mr. Busby's alleged fraud, plaintiffs seek "delinquent contributions, dues, interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs . . . ," and an equitable accounting of LCJ's books and records for the period of September 1, 2006, through March 31, 2009, and all other legal and equitable relief the Court deems just and proper (Compl. at ¶ 58). As part of the alter ego and piercing the corporate veil theories of liability, plaintiffs ask the Court to find Mr. Busby and KB jointly and severally liable for these damages with LCJ (Count VIII),

## III.

Mr. Busby moves to dismiss the Funds' common law fraud claim (Count VI) against him under Rule 12(b)(6), on the grounds that ERISA and the LMRA preempt those claims, and under Rule 9(b), for failure to meet the heightened pleading standards for fraud. For the following reasons, we deny Mr. Busby's motion to dismiss.

## A.

Mr. Busby first argues that plaintiffs' common law fraud claim should be dismissed because it is preempted by ERISA. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA preemption turns on the parameters of the phrase "relate to an employee benefit plan." *Id.* As the Seventh Circuit has observed, this critical phrase is "not . . . self-defining." *Trustees of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 774 (7th Cir.2002). The Supreme Court has cautioned that if this "clearly expansive" phrase "were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere . . . ." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (*"Travelers"*) (internal citations and quotations omitted). Such a construction of the phrase "relate to" would run contrary to the strong presumption that "historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* at 654–55, 115 S.Ct. 1671; *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.,* 578 F.3d 505, 514 (7th Cir.2009) ("[W]hile ERISA's preemption is broad, it does not sweep all state law off the table").

In an effort to clear the "murky waters of ERISA preemption," *Biondi,* 303 F.3d at 774, the Supreme Court has laid out standards to apply in interpreting the scope of the phrase "relate to." "A law relate[s] to a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] reference to such a plan." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (internal quotations omitted). Under the second inquiry ("reference to such a plan"), the Supreme Court has held preempted "a law that imposed require-

ments by reference to ERISA covered programs," "a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision," and "a common-law cause of action premised on the existence of an ERISA plan." *Id.* at 324–25, 117 S.Ct. 832 (internal citations and quotations omitted).

■ A law that does not refer to ERISA plans may yet be preempted if it has a "connection with" ERISA plans. *Dillingham,* 519 U.S. at 325, 117 S.Ct. 832. To determine whether a state law has this connection, the Supreme Court looks both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* "ERISA's primary objectives are to protect . . . the interests of participants . . . and their beneficiaries, by requiring the disclosure and reporting . . . of financial and other information . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." *Biondi,* 303 F.3d at 774.

■ Using this framework, the Seventh Circuit has interpreted Supreme Court precedent as identifying at least three instances where state law can be said to have a "connection with" or "reference to" employee benefit plans: "when it (1) mandate[s] employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA." *Biondi,* 303 F.3d at 775 (citing *Travelers,* 514 U.S. at 658–60, 115 S.Ct. 1671). A common law cause of action falls into one of these three categories when it is "premised on the existence of an ERISA

plan," or relies, "for its very operation, on a direct and unequivocal nexus with the ERISA plan." *Biondi,* 303 F.3d at 778 (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)). When a fund's claim is one for common law fraud, a traditional area of state regulation, the defendant "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Biondi,* 303 F.3d at 775.

■ Applying these standards, it is evident that plaintiffs' fraud claim is not preempted under either of the first two prongs of *Biondi.* In *Biondi,* the appeals court considered a common law fraud claim brought by plan fiduciaries to recoup money improperly expended due to a plan participant's fraudulent conduct. The Seventh Circuit held that the common law fraud claim was not preempted by ERISA: the claim did not mandate employee benefit structures or their administration, nor did it bind plan administrators to particular choices or preclude uniform administrative practices. 303 F.3d at 775. The appeals court held that the lawsuit was in the plan participants' and beneficiaries' best interests and was consistent with the trustees' fiduciary obligations: indeed, the suit was an "attempt to protect the financial integrity of the Fund." *Id.*; *see also Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 23 (2d Cir.1996) (holding that ERISA did not preempt a common law fraud claim by trustees of an employee benefit plan against a plan participant who falsely listed another person as an employee, who subsequently received more than $100,000 in medical benefits, which the suit sought to recover). The Seventh Circuit also held that permitting the fraud claim to proceed posed no potential to conflict with Congress's goal for national uniformity in the administration of ERISA plans. *Id.*

In the instant case, the Funds seek money they claim was improperly withheld by Mr. Busby due to his alleged fraudulent misrepresentations. As in *Biondi*, their lawsuit aims to benefit plan participants' and beneficiaries' best interests, and is consistent with a uniform application of the goals of ERISA. *See also Geller*, 86 F.3d at 23 ("allowing the plaintiffs to pursue their common law fraud claim would in no way compromise the purpose of Congress" in enacting ERISA, since "[t]he unauthorized diminution of pension benefits ... is squarely at odds with the congressional purpose of protecting pension benefits"). As in *Biondi*, plaintiffs' common law fraud claim does not mandate employee benefit structures, bind employers or plan administrators to particular choices, or preclude uniform administrative practice. Moreover, as in *Biondi*, the alleged tort of common law fraud asserted here "clearly makes no direct reference to ERISA plans nor relies on the existence of such plans to operate." *Biondi*, 303 F.3d at 778.

■ The issue of whether preemption is appropriate under the third prong of *Biondi*, on the ground that plaintiffs are using a common law fraud claim as an alternative enforcement mechanism to ERISA's civil enforcement provision, warrants a more extended analysis. Where the state law does not expressly refer to ERISA or ERISA plans, the state law may act as an alternative enforcement mechanism where "the existence of a pension plan is a critical element of a state-law cause of action." *Biondi*, 303 F.3d at 776 (citing *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 815, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)). Moreover, ERISA will preempt a state law claim where it requires a " 'court to interpret or apply the terms of an employee benefit plan.' " *Biondi*, 303 F.3d at 780.

In *Biondi*, the defendant argued that the trustees could not prove that he committed fraud without referring to the plan's provisions, and thus, that the claim was subject to preemption under Section 1144(a). *Biondi*, 303 F.3d at 777. In *Biondi*, the fund's trustees alleged that a fund participant committed fraud by intentionally failing to inform the fund that he was divorced so that the fund would continue to provide his ex-wife with medical coverage and benefits. *Id.* at 770. "The trustees sought to recover the payments made for the ex-wife's post-divorce medical claims, plus interest, fees, costs, and punitive damages." *Id.* at 770–71. The defendant argued that the fraud claim was preempted because it was dependent on the plan's requirement that participants notify the fund of changes in marital status. *Id.* at 780.

The Seventh Circuit held that a state law claim is not preempted simply because "it requires a cursory examination of ERISA plan provisions," as opposed to requiring the court "to interpret or apply the terms of the employee benefit plan." *Biondi*, 303 F.3d at 780. In *Biondi*, the parties did not dispute the meaning of the plan provision requiring plan participants to inform the fund of their marital status. *Id.* The Court found that the plan's provisions would only need to be examined to determine whether the trustees established that the defendant had a duty under tort law not to conceal his divorce from the fund. *Id.* at 781. While resolution of the claim would require an examination of certain plan provisions, the Court's inquiry would be centered on whether the defendant's conduct comported with the relevant tort duty. *Id.* (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1471–72 (4th Cir.1996)). Thus, the *Biondi* Court held that the employee benefit plan was merely the "context" in which the employee's alleged fraud was committed: in essence, "[t]he Trustees were defrauded in the context of a contractual relationship,

and as such they are entitled under Illinois law to sue in tort to recover damages for that fraud." *Id.* at 781–82.

As did the defendant in *Biondi,* Mr. Busby here argues that the plaintiffs' fraud claims "are founded upon" the collective bargaining agreement between LCJ and its union employees and that plaintiffs' claims "are nothing more than an attempt to enforce the provisions of the CBA between the Union and LCJ" (doc. # 48: Def.'s Mem. in Supp. of Mot. to Dismiss at 7). Mr. Busby contends that the Court will have to interpret the CBA to determine whether Mr. Busby made a false statement of material fact because the CBA defines whether the employees at issue actually performed "covered work," entitling plaintiffs to benefit contributions and dues. Mr. Busby argues that LCJ performed both cleanup on construction sites and janitorial services in buildings not under construction, but that only the former work constitutes "covered work" and necessitated payment of contributions and dues (Def.'s Mem., at 7–8).

■ To determine whether we must interpret the CBA in order to resolve plaintiffs' common law fraud claim, we look to the elements needed to prove a common law fraud claim in Illinois in conjunction with the allegations in the complaint. *Biondi,* 303 F.3d at 777. A claim for common law fraud in Illinois requires the Funds to prove: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling,* 228 Ill.2d 324, 320 Ill.Dec. 807, 888 N.E.2d 24, 35–36 (2008).

Plaintiffs contend that proof of the allegations of fraud in the Complaint does not require interpretation or enforcement of the CBA. Specifically, plaintiffs argue that "if the ERISA plan documents required any interpretation with respect to the Funds' common law fraud claim against Busby, the trust documents would only need to be referred to in order to determine the extent of Busby's liability, not to prove the Funds' theory of liability" (doc. # 50: Pls.' Resp. at 6). Thus, plaintiffs maintain that they are not using the common law fraud claim as an alternative enforcement mechanism to ERISA's civil enforcement provision, and that their claim is not preempted by ERISA.

We agree. Plaintiffs have adequately pleaded a fraud claim which does not require interpretation of the CBA. As explained in *Biondi,* Illinois law creates a duty, "separate and distinct" from ERISA, not to commit the tort of fraudulent misrepresentation. *Biondi,* 303 F.3d at 777. Plaintiffs allege that the individuals whose names Mr. Busby removed from the altered checks performed covered work during the September 1, 2006, through March 31, 2009 audit period, and that Mr. Busby removed their names from the checks in order to avoid reporting the hours they worked and payment earned so as to avoid benefit contribution and dues liability (Compl. at ¶¶ 48, 51–53). Although the Complaint does not specify whether the employees identified in the Complaint performed janitorial services or construction site clean-up, plaintiffs attached the relevant CBA, specified the identities of the relevant employees, and alleged that they performed covered work.

These allegations sufficiently plead fraud independent of the alleged ERISA violations. As in *Biondi,* the employee benefit plan is "merely the context in which [alleged] fraudulent conduct occurred." *Biondi,* 303 F.3d at 778 (citing *Geller,* 86 F.3d at 23). Whether or not the employees at issue performed covered work goes to the extent to which plaintiffs

were damaged by Mr. Busby's alleged fraudulent conduct, and it cannot be that "any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA." *Rozzell v. Security Servs., Inc.*, 38 F.3d 819, 822 (5th Cir.1994). As the *Biondi* court explained, one's "decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law," 303 F.3d at 781.[3]

For the foregoing reasons, the we find that ERISA does not preempt plaintiffs' common law fraud claim.

### B.

■ Mr. Busby also argues that plaintiffs' common law fraud claim should be dismissed under Rule 12(b)(6) because Section 301 of the LMRA preempts it (Def.'s Mem. at 5). Similar to ERISA preemption under § 1144(a), "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The Seventh Circuit has explained that for LMRA preemption to apply, "interpretation of the CBA and not simply a reference to it is required." *In Re: Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 289 (7th Cir.2001) (holding that a suit over a mechanic's lien was not preempted because it was a sepa-

rate claim, "not dependent on interpretation of the agreement for its existence even though the amount of pay [wa]s dependent on the CBA."). Even though a state law claim and dispute arising out of the CBA may address the "the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Lingle*, 486 U.S. at 409–10, 108 S.Ct. 1877.

As we have explained, plaintiffs' common law fraud claim does not require interpretation of the CBA. Rather, plaintiffs' allegations—that Mr. Busby fraudulently altered checks, used a non-signatory company to pay employees, and neglected to report hours of covered work—are independent from the CBA and meet the pleading elements of a common law fraud claim. At most, the common law fraud claim will require reference to the CBA after it is determined what alleged "covered work" the employees actually performed. The parties do not appear to dispute that the CBA covers clean-up at construction sites but not janitorial work. Accordingly, the Court finds that the LMRA does not preempt plaintiffs' common law fraud claim, and therefore, we deny Mr. Busby's motion to dismiss Count VI.

### C.

Mr. Busby also seeks to dismiss plaintiffs' common law fraud claim on the

---

**3.** As Mr. Busby notes in his reply memorandum, in *Biondi*, "ERISA d[id] not provide *any* mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants ..." *Biondi*, 303 F.3d at 782 (emphasis in original). However, we disagree with Mr. Busby's suggestion that only claims of fraud by plan participants or administrators may survive preemption, but that state law claims of alleged fraud by others are swept aside by ERISA. Mr. Busby's attempt to distinguish

*Biondi* on this ground gives that case too cramped a reading, as it ignores the appeals court's admonition to be cautious about too readily preempting areas of traditional state regulation, which would do "grave violence to our presumption that Congress intended nothing of the sort." *Biondi*, 303 F.3d at 782 (internal quotations and citations omitted). Thus, we find that *Biondi'*s reasoning as to the defendant's separate and distinct duty not to commit the tort of fraudulent misrepresentation fully applies to the instant case.

ground that it does not plead fraud with particularity. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A common law fraud claim in Illinois requires a plaintiff to prove: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to the induce plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Dilling,* 320 Ill.Dec. 807, 888 N.E.2d at 35–36.

Plaintiffs have met their burden under Rule 9(b). Plaintiffs have sufficiently plead the "who, what, when, where, and how" of the alleged fraud. *Rao,* 589 F.3d at 401. They allege that Mr. Busby engaged in several types of intentional fraud in order to avoid benefit contribution and dues liability: submitting false books and records to the Funds, paying LCJ employees through a non-signatory company, and failing to report hours of covered work performed by LCJ employees. Plaintiffs allege the dates and bank location of these alleged misrepresentations, and in many instances they attach copies of the alleged fraudulent checks. They also allege how Mr. Busby carried out the alleged fraud. The only information that seems to be missing from the Complaint is an allegation as to exactly what type of "covered work" the employees performed. This information, however, can be determined during discovery as plaintiffs have identified the specific employees and checks in the Complaint. Plaintiffs have also adequately alleged Mr. Busby's knowledge of the fraud as he was the one who allegedly altered and submitted the altered checks to the Funds. In addition, plaintiffs adequately alleged their reliance on Mr. Busby's misrepresentations, and how they were damaged as a result.

For the above stated reasons, the Court finds that plaintiffs' allegations of common law fraud meet the Rule 9(b) pleading standards.

## IV.

Lastly, Mr. Busby moves to dismiss the Complaint's piercing the corporate veil count (Count VIII) under Rule 12(b)(6) and Rule 9(b), on the grounds that piercing the corporate veil is a remedy, not a legal claim, and that plaintiffs have not alleged sufficient facts to support their claim. Mr. Busby's first argument is a nonstarter. While the doctrine of piercing the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, "[o]ne who seeks to have the courts apply an exception to the rule of separate corporate existence must seek that relief in his pleading." *Gass v. Anna Hosp. Corp.,* 392 Ill.App.3d 179, 331 Ill.Dec. 854, 911 N.E.2d 1084, 1092 (2009). That is precisely what plaintiffs here have done.

As to Mr. Busby's latter argument, because a fraud claim is at issue here, we ask whether plaintiffs' piercing the corporate veil claim meets the pleading requirements of Rule 9(b). *RehabCare Group East, Inc. v. SAK Mgmt. Servs., LLC,* No. 09 C 4523, 2010 WL 3307084, at *5 (N.D.Ill. Aug. 18, 2010) (emphasis in original) (citing *Flentye v. Kathrein,* 485 F.Supp.2d 903, 913 (N.D.Ill.2007)). Under Illinois law, a court may pierce the corporate veil and charge the individual or entity for the underlying cause of action, "when an individual or entity uses a corporation merely as an instrumentality to conduct that person's or entity's business." *Laborers' Pension Fund v. Lay–Com, Inc.,* 580 F.3d 602, 610–11 (7th Cir.2009) (internal quotations omitted). In an action to pierce the corporate veil, the plaintiffs must allege that: "(1) there [is] such unity

of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences." *Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656, 660–61 (7th Cir.2009). Courts consider a "laundry list of factors" to determine whether there is a "unity of interest" between two corporations or between a corporation and a controlling shareholder, "but the focus is on whether the corporations have respected corporate formalities-respected their separateness from each other—or whether one was a sham acting at the whim of the other," *Id.*

■■■ While having common officers and directors is generally a prerequisite to piercing the corporate veil, this factor is insufficient to justify disregarding the corporate form because it does not, in itself, show that the corporation is really "a dummy or sham for a dominating personality," but only shows that there was the "opportunity to create a unity of interest." *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 380–81 (7th Cir.2008); *see also Gass*, 331 Ill.Dec. 854, 911 N.E.2d at 1092 (finding that the plaintiff failed to allege facts showing the unity of interest or the injustice that would result from the recognition of the separate corporate entities). Mr. Busby argues that plaintiffs have failed to allege sufficient facts showing a unity of interest and that an injustice would result if the veil was not pierced because plaintiffs have not alleged facts demonstrating that the laundry list of eleven factors showing unity of interest was met (doc. # 55: Def.'s Reply at 6–7; Def.'s Mem. at 13).

■■■ We disagree. Plaintiffs need not allege with particularity that each of the laundry list of factors relevant to show a unity of interest is present. Rather, plaintiffs must plead facts showing with particularity that KB, LCJ, and Mr. Busby did not respect their separateness from each other and that an injustice would result from the recognition of the separate corporate entities. Plaintiffs have done so here.

Plaintiffs plead facts with sufficient particularity under Rule 9(b) demonstrating the unity of interest between Mr. Busby, LCJ, and KB. Plaintiffs allege that Mr. Busby is, and was at all relevant times, owner, president, and/or the managing officer and director of LCJ, with the power to control the affairs of LCJ (Compl. at ¶¶ 6, 40). In addition, Mr. Busby was the owner, supervisor/manager, and/or managing officer and director of KB (Compl. at ¶¶ 8, 67–68). Plaintiffs further allege that KB and LCJ use the same employees and equipment, perform the same type of work, operate their business from the same location, and commingle their funds (*Id.* at ¶¶ 61–66). Plaintiffs allege that Mr. Busby "directs, controls, and manipulates the activities" of KB and LCJ, that KB's activities and business operations are conducted in order to further LCJ's business activities, and that LCJ "has held itself out as KB to avoid union obligations" (*Id.* at ¶¶ 68–70). Furthermore, plaintiffs maintain that Mr. Busby commingled his funds with those of LCJ and KB (*Id.* at ¶¶ 73–75).

In addition, plaintiffs allege that Mr. Busby knowingly and intentionally paid LCJ employees through KB in order to avoid benefit contribution and dues' liability (*Id.* at ¶ 38). Further, plaintiffs allege that Mr. Busby personally altered the payee and check endorsement signature on multiple paychecks for employees of LCJ, and presented bank statements based on these altered checks to the Funds, in order to avoid benefit contribution and dues' liability (*Id.* at ¶¶ 45–47). In addition, they allege that Mr. Busby provided false docu-

mentation to support the audit conducted of the Company's books and records for the period of September 1, 2006, through March 31, 2009, in order to avoid benefit contribution and dues' liability (*Id.* at ¶ 48). These allegations go beyond an assertion that there was the "opportunity to create a unity of interest;" they plead that an actual unity of interest did exist between Mr. Busby, KB, and LCJ. *Judson Atkinson,* 529 F.3d at 380–81.

Plaintiffs also plead facts with sufficient particularity to allege that an injustice would result if the corporate veil was not pierced as to Mr. Busby. Plaintiffs allege with particularity that Mr. Busby altered checks of LCJ employees and paid LCJ employees out of KB to avoid paying dues and contributions owed to the Funds and the Union. In addition, plaintiffs allege that they reasonably relied on the false bank statements and documents submitted by Mr. Busby to calculate the amount of benefit contributions and dues owed for the audit period of September 1, 2006, through March 31, 2009, which consequently deprived plaintiffs of benefit contributions, dues, income and information needed to administer the Funds (Compl. at ¶¶ 54–56). Plaintiffs allege that Mr. Busby commingled LCJ's and KB's assets with his own assets, and that he diverted assets from LCJ to KB to avoid contributions and union obligations (*Id.* at ¶¶ 73–74, 77). They also allege that Mr. Busby fails to observe corporate formalities and that LCJ is undercapitalized because KB is propping up LCJ by covering its payroll obligations (*Id.* at ¶¶ 78–79). Finally, plaintiffs allege that Mr. Busby was "personally enriched from disregarding the corporate identity of KB and [LCJ]," as demonstrated by two checks for $20,000.00 written to his ex-wife out of LCJ's bank account (*Id.* at ¶¶ 75–76).

Plaintiffs have met the standards of Rule 9(b), and sufficiently pleaded with particularity their claim to pierce the corporate veil as to Mr. Busby.

## CONCLUSION

For the reasons set forth above, Mr. Busby's motion to dismiss (doc. # 45) is denied. Mr. Busby shall answer Counts VI and VIII of the Complaint by January 18, 2011.